**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | } } } | |
| Plaintiff, | } } | |
| v. | } } | Case No.: **2:18-cv-01592-RDP** |
| NDI OFFICE FURNITURE LLC, | } } } | |
| Defendant. | } | |

## MEMORANDUM OPINION

This case is before the court on Defendant's Motion for Summary Judgment (Doc. # 46) and Defendant's Motion to Strike Certain Exhibits (Doc. # 60). The Motions have been fully briefed (Docs. # 47, 52, 59, 60, 64, 67) and are under submission. After careful review, and for the reasons discussed below, Defendant's Motions (Docs. # 46, 60) are both due to be denied.

## I.       Defendant's Motion to Strike

Before ruling on Defendant's Motion for Summary Judgment, the court first addresses its motion to strike certain items of evidence. In support of its opposition to Defendant's Motion for Summary Judgment, Plaintiff has presented several witness declarations and deposition testimony (*See* Doc. # 52), and Defendant argues that the evidence should be stricken from the Rule 56 record because it (1) includes inadmissible hearsay, (2) is irrelevant, and (3) is barred by the work-product doctrine. (Docs. # 60, 67). The court addresses each of these arguments in detail below. For the following reasons, Defendant's Motion (Doc. # 60) is due to be denied.[1]

---

[1] Plaintiff argues that Defendant's Motion to Strike should be denied because it fails to conform to Rule 56. (Doc. # 64 at 10 n.3). Fed. R. Civ. P. 56(c). This assertion reflects different approaches that federal courts take on the appropriate procedural vehicle to contest Rule 56 evidence. Some courts permit motions to strike that challenged evidence submitted into the Rule 56 record because the Federal Rules of Civil Procedure do not provide another means to contest the evidence's sufficiency. *See, e.g., Morris v. Precoat Metals*, 2013 WL 830868, at *2 (N.D. Ala. Mar. 4,

## A.     Declaration of Lester Pearson is Admissible

Defendant challenges the admissibility of Lester Pearson's Declaration (Doc. # 53-5) claiming it contains hearsay that should be excluded from the Rule 56 record. The challenged statements are statements Pearson attributes to Defendant's former Managers, Mickey Gladney and Gerald Semien. (Doc. # 60 at 3-4; 67 at 1-4).

A hearsay statement is an out-of-court statement that a party offers as evidence "to prove the truth of the matter asserted." Fed. R. Evid. 801(c)(1)-(2). Hearsay is generally inadmissible unless an exception or exclusion applies. Fed. R. Evid. 801-802. The burden falls on the party offering the evidence to show that the statement satisfies the requirements for any hearsay exception or exclusion. *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1207 (11th Cir. 2013); *United States v. Kennard*, 472 F.3d 851, 855 (11th Cir. 2006); *see, e.g.*, *Carden v. Westinghouse Elec. Corp.*, 850 F.2d 996, 1002 (3d Cir. 1988) (holding that hearsay evidence was properly excluded where proponent of evidence failed to satisfy requirements of Fed. R. Evid. 801(d)(2)(D)). The question raised here implicates the admission-by-party-opponent hearsay provision. Fed. R. Evid. 801(d)(2). Under this rule, an out-of-court statement is not hearsay if it "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." *Id.*; *see Zaben v. Air Prod. & Chemicals, Inc.*, 129 F.3d 1453, 1456 (11th Cir. 1997).

"[A] district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be 'reduced to admissible evidence at trial' or 'reduced to admissible form.'" *Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999). "The most obvious

---

2013) (explaining that a motion to strike can be treated like a motion in limine); *UCB, Inc. v. Teva Pharm. USA, Inc.*, 2015 WL 11199058, at *9 (N.D. Ga. Mar. 18, 2015). Other courts require a party to challenge the opposition's factual assertion, rather than its submitted evidence, on the ground that the factual assertion "cannot be presented in a form that would be admissible in evidence." *See, e.g., Norris v. GKN Westland Aerospace, Inc.*, 2013 WL 440755, at *1 (M.D. Ala. Feb. 5, 2013) (quoting Fed. R. Civ. P. 56(c)(2)). The court finds it appropriate to consider the merits of Defendant's Motion to Strike. (Doc. # 60).

way that hearsay testimony can be reduced to admissible form is to have the hearsay declarant testify directly to the matter at trial." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012).

Defendant argues that Pearson's statement "[b]efore Gladney left[,] he told me that NDI did not hire women because there were too many men working there and women would be a distraction" is hearsay and does not fall within the nonhearsay exclusion for admission by a party opponent (Doc. # 60 at 3-4 (quoting Doc. # 53-5 at 2, ¶ 3)). Specifically, it contends that Pearson's statement is not a statement against interest made by an agent or servant within the scope of his employment for two reasons. (*Id.* at 4-5). The court disagrees

First, Defendant argues "it is entirely plausible" that Gladney's alleged statements occurred after Defendant terminated him and thus not while acting as Defendant's agent. (Doc. # 60 at 4). But, the declaration states that Gladney's statement occured "[*b*]*efore* Gladney left." (Doc. # 53-5 at 2, ¶ 3) (emphasis added). In context, "[b]efore Gladney left" refers to a time frame when Pearson and Gladney were both employed—before Defendant fired Gladney. On this record, the court cannot say that the statement was made during some transitory period after Gladney was fired and lingered around Defendant's warehouse.[2]

Second, Defendant argues that even before Gladney was fired, "it is unclear whether" he "could be considered [Defendant's] agent or servant" in making the alleged statement. (*Id*. at 4-5). In the context of showing whether an employee was acting as an agent for hiring decisions, the question is not whether the speaker was the sole decisionmaker in the hiring process, but whether the agent had "some kind of participation in the employment decision or policy of the employer"

---

[2] At this stage, the court simply finds that Plaintiff, as proponent of the evidence, has carried its burden to prove that a hearsay exception applies. Nothing in the court's opinion precludes Defendant from refuting this with additional evidence in a motion in limine or re-raising its objections at trial.

and/or was more than "ministerial." *Kidd*, 731 F.3d at 1209 (internal citation omitted) (quoting *Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir.2005)). In *Kidd*, the Eleventh Circuit explained that ministerial tasks in the employment process include "gathering resumes" or passing along information that was the employee's *personal* opinion based on his or her own observations. *Id*. at 1210; *see Rowell*, 433 F.3d at 800-01 (holding that employee was not acting within scope of employment where there was no evidence that the declarant was involved in hiring process). However, where the employee was still involved in "assessing the performance" of other employees or was "otherwise included in the decisionmaking process," that speaker's statement may be attributed to the employer. *Kidd*, 731 F.3d at 1210; *see Simple v. Walgreen Co.*, 511 F.3d 668, 672 (7th Cir. 2007) (internal citations omitted) ("A subordinate's account of an explanation of the supervisor's understanding regarding the criteria utilized by management in making decisions on hiring … is admissible against the employer, regardless of whether the declarant has any involvement in the challenged employment action.").

Here, there is substantial evidence that Gladney was speaking within the scope of his employment with Defendant. Defendant states that "Gladney was fired from his position as Warehouse Manager." (Doc. # 60 at 4). Warehouse Managers were involved in the hiring process, including being Defendant's contact point with staffing recruiters regarding open positions in the Birmingham Warehouse. (Doc. # 53-8 at 3-6). Further, there is evidence that Gladney's successor, Pearson, had a supervisory role in "assessing the performance" of employees in the warehouse and was thus involved in the employment and hiring process. (Doc. # 52 at 17-18 (citing Docs. # 53-5 at 4, ¶ 19; 53-20 at 22)). *Kidd*, 731 F.3d at 1210. Thus, there is sufficient evidence for a trier of fact to infer that Gladney "participat[ed] in the employment decision or policy of the employer" and made his statements within the scope of his employment. *Id.* at 1209.

Plaintiff has similarly shown that in Pearson's other statement in his declaration, Semien was acting as Defendant's agent when he told Alicia Jenkins that "[t]hey do not hire women in the warehouse." (Doc. # 53-5 at 4, ¶ 14). The record shows that Green instructed Semien "don't hire women." (*Id*. at 3, ¶ 8). In relaying this information to Alicia, Semien was purportedly acting on direct instruction from his supervisor and was "included in the decisionmaking process." *Kidd*, 731 F.3d at 1210.

Despite this contemporaneous instruction from Green, Defendant also challenges the admissibility of Semien's alleged statement because the reference to "they" as the party not hiring women "could be anybody" so that Semien's statement cannot be attributed to Defendant as admission by a party opponent. (Doc. # 60 at 5-6) (citing *Edwards v. Nat'l Vision, Inc.*, 946 F. Supp. 2d 1153, 1163 (N.D. Ala. 2013), *aff'd*, 568 F. App'x 854 (11th Cir. 2014)). Unlike in *Edwards*, a trier of fact could easily conclude that the "they" in Pearson's statement is Defendant, *i.e.*, its management. Before Semien told Alicia that "[t]hey do not hire women in the warehouse" (and that remark was in response to Alicia's inquiry about the *Warehouse Coordinator* position), Pearson "overhead a telephonic conversation between Jimmy Green, Jr … , [Defendant's] Owner, and Semien .… [where] Green, Jr. specifically told Semien, 'don't hire women.'" (Doc. # 53-5 at 3, ¶ 8). Pearson asked for clarification about the conversation he overhead on speaker phone, and Semien responded that "[Defendant] is trying to hire some new people, a *Warehouse Coordinator*." (Doc. # 53-5 at 3, ¶ 11) (emphasis added). Semien's statement to Alicia is undoubtedly "attribut[able] to the employer" and satisfies the nonhearsay exclusion under Rule 801(d)(2)(D). *Edwards*, 946 F. Supp. 2d at 1163 (citing *Carden*, 850 F.2d at 996); *see Zaben*, 129 F.3d at 1456-57 (citing *Hybert v. Hearst Corp.*, 900 F.2d 1050, 1053 (7th Cir. 1990)) (explaining that if employee "testified with respect to [discriminatory] statement made by specifically

identified, senior managers … their statements … might have been … permissible"); *Hybert*, 900 F.2d at 1053 (holding that comments by "a member of management… as to the attitude, intentions, and/or policy of the higher-ups" was attributable to the Defendant employer).

### B.     Snelling's Email to Carmen Lowe

Defendant next argues two emails that Snelling, a staffing recruiter Defendant engaged to fill its Warehouse Coordinator position, sent to Carmen Lowe, a candidate for the Warehouse Coordinator position, are inadmissible for lack of relevance.[3] (Doc. # 60 at 8-9). Plaintiff argues in response that the emails are relevant to showing that Defendant's position argued in its summary judgment motion -- that it did not consider Lowe for the Warehouse Coordinator position because "[Green] wanted Semien to become comfortable in his position before hiring a new employee" -- is pretextual and "the actual reason Lowe was not considered … was because of her sex." (Docs. # 64 at 5; 47 at 10-11). Evidence is relevant if "(a) it has *any tendency* to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401 (emphasis added). "The standard for what constitutes relevant evidence is a low one." *United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002).

The fact that Snelling submitted Lowe's resume to Green, Green showed interest in interviewing Lowe and discussed her application with his Warehouse Manager, Green thereafter immediately closed the job posting, and then reposted the job a month later *without following up* with Lowe tends to make it more probable that Green did not consider her for the position. This and other evidence tend to make it more probable than it would be without the evidence that Green did not consider Lowe because of her sex. In other words, if Green merely thought Semien needed

---

[3] Defendant argues that the email is hearsay because the email is an out-of-court statement written by Michael Rovnak (a Snelling employee) containing the out-of-court statement of Green. (*See* Docs. # 60 at 6-7, 53-37, 53-6). But, Plaintiff asserts that Rovnak will be available to testify at trial regarding his email statement, which would reduce his statement to admissible form. (Doc. # 64 at 7). *See Macuba*, 193 F.3d at 1323.

time to adjust, a reasonable juror could question why the company would have not reached out to Lowe when it restarted the job search. Without question, this fact is of consequence in determining whether Defendant is liable for sex discrimination. Thus, the court cannot say on this record that Exhibit C (Doc. # 53-6) and Exhibit AA (Doc. # 53-37) are inadmissible.

### C. Snelling's Letter to the EEOC

Exhibit O (Doc. # 53-25) is an email from Snelling to the EEOC stating the job orders Snelling had open for Defendant starting January 1, 2016 and ending November 30, 2017. Plaintiff contends Exhibit O contains statistically relevant evidence that supports its allegations that Defendants engaged in a discriminatory pattern or practice. (Doc. # 64 at 8). Statistical evidence may be used to establish a pattern or practice; it may also be probative of an individual act of discrimination. *EEOC v. Joe's Stone Crab*, 220 F.3d 1263, 1287 (11th Cir. 2000). Plaintiff is correct that the letter is relevant—it contains samples of job applications that are relevant to establishing a pattern or practice of discrimination. (Doc. # 64 at 7-8).

Apart from relevance, Defendant is also concerned that this document fails the Rule 403 balancing test because, in addition to lacking probative value, the "consideration of this letter" would unduly burden the court. (Doc. # 60 at 8). While Defendant's concern is appreciated, the court is not inconvenienced by the three-page letter. (*See* Doc. # 60 at 8).[4]

### D. Defendant's Statement and Letter to the EEOC

Defendant also challenges the admissibility of two letters -- a position statement (Doc. # 53-33) and a response to Plaintiff's request for information (Doc. # 53-34) -- that Defendant's counsel drafted and sent to the EEOC regarding the discrimination charge relevant to this action. (Docs. # 60 at 9-10; 67 at 7-8). Specifically, it asserts that the letters (1) are not probative and, (2)

---

[4] Nor is the email to the EEOC hearsay for summary judgment purposes. Plaintiff asserts that it will "undoubtedly" be able to produce live testimony to the substance of the email. *See Macuba*, 193 F.3d at 1323.

alternatively, are protected as work product. (Docs. # 60 at 9-10; 67 at 7-8). Plaintiff points to Defendant's EEOC charge communications and contends that they undermine the credibility of Defendant's explanation on summary judgment that it would not have hired Alicia because it received the resume and application of a more qualified candidate, Kelvin French. (Docs. # 52 at 24; 64 at 8-9). Defendant's position statement does not emphasize Alicia's qualifications, but rather her failure to complete an application and submit a resume to the proper employee. (Docs. # 47 at 29-31; 64 at 8-9). Of course, Defendant is free to explain why it did not address Alicia's qualifications. But, this evidence is nevertheless relevant and probative to the veracity of Defendant's asserted defenses. *See EEOC. v. Unit Drilling Co.*, 2014 WL 3548845, at *7 (N.D. Okla. July 17, 2014); *Am. Ctr. for Int'l Lab. Solidarity v. Fed. Ins. Co.*, 518 F. Supp. 2d 163, 168-69 (D.D.C. 2007), *aff'd*, 548 F.3d 1103 (D.C. Cir. 2008) ("Position Statements may be admissible as evidence of party admissions or *for purposes of witness impeachment*." (emphasis added)).

Defendant argues in the alternative that this evidence is inadmissible because it is work product. (Docs. # 60 at 9-10; 67 at 7-8). This argument also misses the mark. On its face, it could be understood that Defendants' response to the EEOC charge was produced by counsel anticipating that the EEOC may sue as a result of the investigation. (*See* Doc. # 67 at 7). *See Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1334-35 (11th Cir. 2018). However, this observation does not tell the whole story. Defendant's counsel prepared this document *specifically* in response to the EEOC charge and it purports to state Plaintiff's position about its hiring practices. Therefore, Defendant's position statements to the EEOC are not the type of documents that must be excluded so as "to protect the integrity of the adversary process by allowing a lawyer to work 'with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.'" *Id.* (internal citation omitted); *see Capella Univ., Inc. v. Exec.*

*Risk Specialty Ins. Co.*, 617 F.3d 1040, 1048 (8th Cir. 2010) ("position statements submitted by the charged party may all be admissible as relevant evidence in subsequent litigation."); *Unit Drilling*, 2014 WL 3548845, at *7 (N.D. Okla. July 17, 2014); *Owen v. Cty. of Franklin, Virginia*, 358 F. Supp. 3d 545, 551-52 (W.D. Va. 2019).

Further, even if the position statements are protected by the work-product privilege, Defendant waived that privilege by disclosing it to its adversary.[5] *Doe No. 1 v. United States*, 749 F.3d 999, 1008 (11th Cir. 2014); *Stern v. O'Quinn*, 253 F.R.D. 663, 681-82 (S.D. Fla. 2008) (internal citation omitted) ("Work-product protection is waived when protected materials are disclosed in a way that 'substantially increases the opportunity for potential adversaries to obtain the information.'"). Although Defendant submitted its position statement in response to Alicia's charge of discrimination during the EEOC's investigation of that charge, Defendant knew (or reasonably should have known) that its statement could be used against it—either by the EEOC or Alicia. Thus, Defendant's EEOC communications to the EEOC are not protected under the work product privilege.

## II.  Factual Background[6]

After careful review of the Rule 56 record, the court finds that material facts remain disputed in this case with respect to all of Plaintiff's claims.

---

[5] Defendant argues that Fed. R. Evid. 502(a) precludes the admissibility of its disclosures to the EEOC. This argument misses the mark. Rule 502(a) limits the waiver exception to protect "undisclosed communications." Fed. R. Evid. 502(a). Nothing in either exhibit is an undisclosed communication. *See, e.g.*, *Wadler v. Bio-Rad Lab'ys, Inc.*, 212 F. Supp. 3d 829, 850 (N.D. Cal. 2016) (holding that there is "no doubt" that defendant waived privilege to documents disclosed to SEC and DOJ).

[6] The facts set out in this opinion are gleaned from the parties' submissions and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

## A.    Sex Discrimination

Plaintiff asserts two sex discrimination claims against Defendant. (Doc. # 1 at 4-7). Based on the record, with all reasonable inferences drawn in favor of Plaintiff, a rational trier-of-fact could find the following facts and determine that Defendant discriminated against Alicia and other female applicants because of their sex.

1. Defendant purportedly "did not hire women because there were too many men working there and women would be a distraction." (Doc. # 53-5 at 2, ¶ 3; *see* Docs. # 53-5 at 3, ¶¶ 8, 11; 53-32 at 3, ¶¶ 8-10). Defendant had a policy of not hiring women in its warehouse. (Docs. # 53-1 at 41; 53-5 at 4, ¶ 14; 53-24 at 3).

2. In 2014 and 2015, Defendant did not employ any women in a warehouse role, either as full-time employees or as contractors through staffing agencies. (*See* Docs. # 53-19; 53-20 at 11; 53-8).

3. Gerald Semien, Defendant's Warehouse Manager, told Alicia Jenkins ("Alicia")[7] that Defendant does "not hire women in the warehouse" when she inquired about applying for Defendant's Warehouse Coordinator Position on August 31, 2015. (Docs. # 53-5 at 4, ¶¶ 8, 14; 53-31 at 4, ¶ 14).

4. Defendant did not consider Alicia for its open Warehouse Coordinator position after she inquired about the Warehouse Coordinator position. (Docs. # 53-33 at 4-5; 53-21 at 16).

5. Green received Carmen Lowe's application for the Warehouse Coordinator position on July 8, 2015 and discussed her resume with Semien. (Docs. # 53-37; 53-38). Defendant suspended the Warehouse Coordinator job search and claims it did so because the new Warehouse Manager needed time to get acclimated to his new role. (Doc. # 53-6). Yet,

---

[7] The EEOC has filed this action on behalf of Alicia Jenkins, her son Arcenaux Jenkins, and a class of female applicants. The court refers to Alicia Jenkins and Arecenaux Jenkins by the first names to distinguish them.

when Defendant reopened the search, it did so without contacting Lowe and ultimately hired Kelvin French, a man, for the position. (Docs. # 53-7 at 32; 53-8 at 7).

6. There is a dispute regarding the qualifications, experience, and skills required for the Warehouse Coordinator position, including: job stability, the frequency of lifting heavy objects, communication skills, customer service experience, and inventory experience. (Docs. # 53-1 at 37-38; 53-5 at 3-4; 53-8; 53-26 at 13-14; 53-29 at 14-15). There is also a dispute about Defendant's assessment of candidates' qualifications, experience, and skills. (Docs. # 53-1 at 37-38; 53-5 at 3-4; 53-8; 53-26 at 13-14; 53-29 at 14-15).

7. There is substantial evidence that Alicia was qualified for Defendant's Warehouse Coordinator position. (Docs. # 53-15 at 7-9, 16-17, 44; 53-30).

**B.    Retaliation**

Plaintiff asserts two retaliation claims against Defendant. (Doc. # 1 at 7-11). Drawing all reasonable inferences in Plaintiff's favor, and based on the following facts, reasonable jurors could find that Defendant retaliated against Alicia and Arceneaux because of Alicia's protected activity.

1. Defendant determined in July 2015 that it would bring in a third-party contractor to complete warehouse tasks to replace certain employees, including Arceneaux, Alicia's son. (Docs. # 53-50 at 40; 53-51 at 6, ¶ 13). Defendant hired Arceneaux from a different third-party contractor to a full-time employee August 1, 2015. (Docs. # 53-50 at 40; 53-51 at 6, ¶ 13).

2. Alicia engaged in protected opposition when she complained to Semien and Green about the discrimination she faced when inquiring about Defendant's open Warehouse Coordinator position on August 31, 2015. (Docs. # 53-15 at 40; 53-21 at 9).

3. Defendant terminated Arceneaux on September 11, 2015, twelve days after Alicia

11

complained of Defendant's discrimination. (Doc. # 47 at 13, 27).

4. Semien was not aware that Green intended to terminate Arceneaux. (Doc. # 53-20 at 22).

5. Defendant told Arceneaux it was terminating him for overtime and employee cutbacks and then later sent him a letter citing performance issues, including attendance, damaging merchandise multiple times, using cell phones while working, and unsafe operation of warehouse equipment. (Docs. # 53-1 at 13, 66; 53-14 at 2). Defendant also stated that it was "growing and … having a difficult time … fulfilling special orders." (Doc. # 53-21 at 22).

6. Defendant hired additional warehouse workers in the six weeks following Arceneaux's discharge. (Doc. # 53-19).

7. There is evidence from which a reasonable juror could find that Arceneaux did not damage merchandise or operate a forklift unsafely. (Doc. # 53-1 at 33). Although other employees damaged merchandise with a forklift without being disciplined by Defendant, damaging merchandise was not a cause for termination. (Docs. # 53-32 at 4, ¶ 18; 53-5 at 4, ¶ 19).

8. Arceneaux had two instances of attendance issues, the first of which was before Defendant hired Arceneaux as a full-time employee. (Docs. # 53-52; 53-53). the other attendance issue is disputed. (Doc. # 53-53). Defendant recorded these attendance infractions. (Docs. # 53-52; 53-53). Defendant did not record Arceneaux's violations for reckless driving, smoking, or loud music. (Doc. # 53-10 at 30). Defendant did not terminate Arceneaux at the time he allegedly violated any of Defendant's policies. (Doc. # 52 at 44 (citing Doc. # 53-20 at 28).

9. Defendant did not have a policy against cell phone use or loud music at the time Arceneaux was terminated. (Docs. # 53-32 at 4, ¶ 19; 53-5 at 4, ¶ 17; 53-24 at 4, ¶¶ 22-23). There is substantial evidence that other employees used cell phones in the warehouse and were not

disciplined. (Docs. # 53-32 at 4, ¶ 18; 53-5 at 4, ¶ 19).

10. Plaintiff claims that Defendant's firing of Arceneaux was in retaliation for Alicia's complaints about discrimination. (Docs. # 1 at 7-8; 52 at 33-38).

## III.   Summary Judgment Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on his allegations made in the complaint; instead, as the party bearing the burden of proof at trial, he must come forward with at least some evidence to support each element essential to his case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear ... that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

The Eleventh Circuit has interpreted *Celotex* to require that, as to issues on which the nonmovant would bear the burden of proof at trial, a

> moving party is not required to support its motion with affidavits or other similar material negating the opponent's claim in order to discharge this initial responsibility. Instead, the moving party simply may show [ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the non-moving party's case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial.

*Fitzpatrick*, 2 F.3d at 1115 (quoting *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)). And, where the moving party has met this initial burden by showing that there is an absence of evidence supporting the nonmoving party's case, the nonmoving party must

> respond in one of two ways. First, he or she may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was "overlooked or ignored" by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence. Second, he or she may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.

*Id*. (internal citations omitted).

## IV.  Analysis

Plaintiff asserts four claims: (1) sex discrimination on behalf of Alicia and a class of female job applicants in violation of § 703(a)(1) of Title VII; (2) a pattern or practice of failing to hire female applicants because of their sex in violation of §§ 703(a), 707(a) of Title VII;[8] (3) retaliation against Alicia in violation of §704 of Title VII; and (4) retaliation against Arceneaux in violation of §704 of Title VII. (Doc. # 1).

---

[8] The EEOC fails to cite § 707(a). A "pattern or practice claim" is not a freestanding cause of action but "a method of proof" of establishing discrimination prohibited under Title VII, such as § 703(a). *See Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483, 487 (2d Cir. 2013); *EEOC v. CVS Pharmacy, Inc.*, 809 F.3d 335, 341 (7th Cir. 2015). Thus, this claim is understood as a pattern or practice claim under § 707(a) for discrimination prohibited by § 703(a).

Rarely does a court find itself with a case where there is *direct* evidence that the defendant categorically discriminates against women working in its facilities. This is one of those cases. And unsurprisingly, because of that direct evidence, the validity of Plaintiff's claims and Defendant's defenses and alternative explanations for its conduct is for a jury to decide, not the court on summary judgment. Further, with respect to Plaintiff's retaliation claims, there is sufficient evidence to establish a retaliation claim based on circumstantial evidence under the *McDonnell Douglas* framework. For the reasons discussed below, Defendant's Motion for Summary Judgment (Doc. # 47) is due to be denied.

### A. Plaintiff Has Presented Direct Evidence of Defendant Discriminating Against Alicia Jenkins Because of Her Sex

Plaintiff asserts that Defendant discriminated against Alicia because of her sex when she applied for Defendant's Warehouse Coordinator position. Plaintiff supports its claim by asserting direct evidence of discrimination. Title VII makes it "unlawful … for an employer … to fail or refuse to hire … because of such individual's … sex." 42 U.S.C. § 2000e-2(a)(1). Plaintiff may establish a failure to hire claim with direct evidence. *Damon v. Fleming Supermarkets Of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (internal citations omitted). Direct evidence is evidence showing "a discriminatory … attitude correlating to the discrimination … complained of by the employee." *Id.* (internal citation omitted). Put another way, direct evidence of discrimination is evidence that does not require an inference to find discriminatory intent. *Ritchey v. S. Nuclear Operating Co., Inc.*, 2010 WL 11520488, at *10 (N.D. Ala. Mar. 29, 2010), *aff'd*, 423 F. App'x 955 (11th Cir. 2011). For example, the statement "Fire Earley—[H]e is too old" is a prime example of direct evidence of age discrimination. *Id.* (quoting *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081-82 (11th Cir.1990)).

There is direct evidence of discrimination in this case. As already discussed, Pearson observed Semien telling Alicia that "[t]hey do not hire women in the warehouse" when she inquired about the Warehouse Coordinator position. (Doc. # 53-5 at 4, ¶ 14). Pearson also heard Green, Semien's boss and Defendant's owner, instruct Semien to not "hire women. Not at this time."[9] (Doc. # 53-5 at 3, ¶ 8). These statements, if accepted as true, are "prime examples" of direct evidence of discrimination without the need to infer discriminatory intent. *See id.*

Defendant argues that, even if there is evidence of discrimination, it is entitled to judgment as a matter of law because it has established a same-decision defense under 42 U.S.C. § 2000e-5(g)(2)(B) because it hired a more qualified individual after Alicia inquired about the Warehouse Coordinator position. (Docs. # 47 at 29-33; 59 at 14-23). A meritorious same-decision defense, however, would preclude damages but not liability. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 94-95 (2003). Thus, if Defendant prevails on its same-decision defense, that would only limit Alicia's damages but would not preclude a finding of liability or nonmonetary relief.

In any event, however, Defendant is not entitled to judgment as a matter of law on its same-decision defense because there is a "triable issue concerning the employer's discriminatory intent" and the validity of its defense. *Terry v. CDA Inc.*, 2011 WL 1789809, at *4 (M.D. Ala. May 10, 2011) (citing *Fitzpatrick*, 2 F.3d at 1115) (holding that defendant is not entitled to judgment on same-decision defense where "evidence is not so one-sided" on direct discrimination claim); *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1240 (11th Cir. 2016); *Wright v. Southland Corp.*, 187 F.3d 1287, 1305-06 (11th Cir. 1999); *see Etienne v. Spanish Lake Truck & Casino Plaza, LLC*, 778 F.3d 473, 477 (5th Cir. 2015) ("[T]o prevail on summary judgment … [defendant] must show that any reasonable jury would conclude that it would have made the same decision absent the

---

[9] The court notes that this is not an exhaustive list of the evidence from which a jury could find that the Defendant had a discriminatory animus against women. (*See* Docs. # 53-15 at 26, 40; 53-32 at 3, ¶¶ 8, 9).

discrimination."). There is a genuine dispute whether Alicia was qualified for the Warehouse Coordinator position. And, it follows that there is an issue as to whether, absent any discriminatory motive, Defendant would have passed on Alicia to fill the Warehouse Coordinator position and hired Kelvin French. *See Wright*, 187 F.3d at 1306 ("[P]laintiff in this case has direct evidence of both age discrimination…. He therefore has a case for the jury."). For example, the parties dispute the importance of a candidate's job stability and the necessity of performing frequent heavy lifting compared to other factors, such as communication skills, customer service experience, and inventory experience. (*See* Docs. # 53-1 at 37-38; 53-5 at 3-4; 53-8; 53-26 at 13-14; 53-29 at 14-15). Plaintiff has asserted that Alicia was qualified for the warehouse coordinator position based on her customer service, inventory and warehouse experience, and previous experience lifting and moving heavy objects. (Docs. # 53-15 at 7-9, 16-17, 44; 53-30).

## B. Plaintiff Has Established a Pattern or Practice of Discrimination on the Basis of Sex Against Female Applicants

Plaintiff also asserts that, in addition to proof that Defendant discriminated against Alicia on the basis of sex, there is evidence suggesting a pattern or practice of discrimination against female applicants in Defendant's Birmingham warehouse. Evidence of discrimination may establish a pattern or practice claim. *Joe's Stone Crab, Inc.*, 220 F.3d at 1287 (citations omitted); *Lujan v. Franklin Cty. Bd. of Educ.*, 766 F.2d 917, 929 (6th Cir. 1985) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985)). Sporadic acts of bias are not enough to establish a pattern or practice. *Joe's Stone Crab*, 220 F.3d at 1287. Rather, a plaintiff must show that discrimination was "the company's standard operating procedure." *Id.* (internal quotation marks omitted) (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977)).

There is evidence from which a reasonable jury could conclude that Defendant had a pattern or practice of discriminating against women. Again, Semien stated that Defendant does not

hire women in its warehouse, and Green categorically instructed Semien not to do so.[10]  (Docs. # 53-5 at 4, ¶ 14; 53-24 at 3). Further, the content of these statements suggests a broad discriminatory policy toward *all* women. *See EEOC v. Alton Packaging Corp.*, 901 F.2d 920, 924 (11th Cir. 1990) (stating that discriminatory remarks regarding defendant's treatment toward black employees in hiring context leave "no reason to think those attitudes" toward black employees would "differ from hiring to promotion"); *Burrell v. Bd. of Trustees of Georgia Mil. Coll.*, 125 F.3d 1390, 1394 (11th Cir. 1997) (stating that "broad derogatory statements about a gender … demonstrate a general discriminatory animus toward that protected group … [and] may obviate the need for inferences about the speaker's motivation for a *wide category of employment decisions*." (emphasis added)). Thus, there is a dispute of fact about whether Defendant's standard operating procedure was not to hire women in its warehouse.

Defendant argues that there is evidence to refute this policy, such as the following: there were women in *nonwarehouse* roles and in the warehouse after 2015; Green interviewed women for roles; and previous managers disputed the existence of any policy against women being employed in the warehouse. (Doc. # 47 at 36-38). But, the existence of that evidence simply means that a jury must decide this question by balancing it against other evidence, such as the "fact" that there no women were employed in a warehouse role during the period contemporaneous with the statements evidencing discrimination and that Defendant failed to hire any of the eleven women who applied for the Warehouse Coordinator Position. (*See* Docs. # 53-19; 53-20 at 11; 53-8). *See Monaco v. City of Jacksonville*, 51 F. Supp. 3d 1251, 1259 (M.D. Fla. 2014), *aff'd*, 671 F. App'x 737 (11th Cir. 2016) (internal citations omitted); *Joe's Stone Crab*, 220 F.3d at 1287 ("[S]tatistical

---

[10] Defendant attempts to mince Green's words by arguing that his qualifier to not hire women "at this time" defeats the practice claim. (Doc. # 59 at 6). But, Defendant does not provide any support for any legal or practical distinction in the length of time that its policy was in place.

evidence often is used to establish the existence of a pattern or practice.'). The weight and credibility to be afforded to the competing evidence is a determination for the jury, not the court.

Finally, Defendant argues that the court should grant judgment in its favor with respect to six of the eleven female applicants because the EEOC never presented six of the women for deposition. (Docs. # 47 at 38-39; 59 at 8-11). This is a discovery dispute and is premature at this stage. The EEOC is the sole Plaintiff litigating this case on behalf of a class. So, the court cannot "dismiss" the nonparties.

On Plaintiff's pattern or practice claim, if Plaintiff establishes that Defendant had a pattern or practice of discriminating against female applicants for jobs in the warehouse, "a rebuttable presumption" that each applicant was discriminated against applies, "and the burden then shifts to … [D]efendant to show by clear and convincing evidence that each employment decision was not made in furtherance of the discriminatory policy." *EEOC v. Darden Restaurants, Inc.*, 143 F. Supp. 3d 1274, 1280 (S.D. Fla. 2015) (citing *Teamsters*, 431 U.S. at 359-62); *Joe's Stone Crab*, 220 F.3d at 1287 n.22. The EEOC requests injunctive relief on behalf of the female applicants at Defendant's Birmingham warehouse. The existence of a pattern or practice "justif[ies] an award of prospective relief, such as an injunctive order against continuation of the discriminatory practice." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 352, n.7 (2011) (internal quotation marks omitted) (citing *Teamsters*, 431 U.S. at 361); *see Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1238 n.18 (11th Cir. 2000).

However, to the extent that Plaintiff seeks "individual relief" on behalf of *any* female applicant, it will bear the burden of establishing that each claimant applied for a job, "was discriminatorily denied an employment opportunity," and is due individual damages, including

backpay. [11] (*See* Docs. # 47 at 38-39; 59 at 8-11). *Teamsters*, 431 U.S. at 361; *July v. Bd. of Sch. Comm'rs*, 291 F.R.D. 653, 660 (S.D. Ala. 2013); *Rutstein*, 211 F.3d at 1237 (internal citation omitted). Thus, the issue of individual relief, including any individual relief for the six applicants Defendant seeks to dismiss from this case, is for the "remedial" stage of the trial and not due for resolution on summary judgment. *See Teamsters*, 431 U.S. at 361; *see Rutstein*, 211 F.3d at 1240 (explaining that "liability for damages is a necessarily individualized inquiry" that is not solvable on a class-wide basis in a Title VII case).

## C.     Plaintiff Has Established Defendant Retaliated Against Arceneaux

Plaintiff has also asserted a claim for retaliation on behalf of Arceneaux. Plaintiff contends that Alicia engaged in protected activity by complaining to Defendant about its discriminatory practices of not hiring women, and Defendant retaliated by firing Arceneaux because of Alicia's protected conduct. (Doc. # 1 at 8-9). Defendant argues in its motion that there is nothing in the record that connects Alicia's protected activity to Defendant's actions against Arceneaux because Green made the decision to terminate Arceneaux *before* Alicia engaged in the protected activity. (Doc. # 47 at 24-28).

Because there is absence of direct evidence of retaliation against Arceneaux, the court must analyze Plaintiff's retaliation claim on his behalf by looking to circumstantial evidencing, including use of the burden-shifting framework developed by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under this framework, "the plaintiff must first establish a prima facie case by demonstrating (1) [he] engaged in statutorily protected activity, (2) [he] suffered an adverse employment decision, and (3) the decision was causally related to the

---

[11] With respect to remedy issues, Defendant does not argue that the record lacks evidence that the female applicants that it has not deposed did not actually apply for a job with Defendant. Indeed, Defendant admits that "eleven females expressed interest in the position." (Doc. # 47 at 38).

protected activity." *Jones v. Gulf Coast Health Care of Delaware, LLC*, 854 F.3d 1261, 1271 (11th Cir. 2017) (internal citation omitted) (alteration in original). Defendant does not dispute that Arceneaux has established the first and second elements of his retaliation claim under the *McDonnell Douglas* framework. (Doc. # 47 at 24). Rather, it disputes the third element. But, summary judgment on this claim is inappropriate because there is a genuine dispute regarding the cause of Arceneaux's termination.

 "[C]lose temporal proximity between protected conduct and an adverse employment action is generally 'sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection'" and meets the minimal requirement that "the protected activity and adverse action were 'not wholly unrelated.'" *Id*. at 1273 (internal citation omitted) (quoting *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006)). Here, there were twelve days between Alicia's protected activity (her opposition) and Defendant's termination of Arceneaux. On this record, this is sufficiently close in proximity to create a genuine dispute of causation. (Doc. # 47 at 13, 27). *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 601 (11th Cir. 1986) (holding that causation was established from proximity of one month between protected activity and adverse action); *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (holding seven weeks between protected activity and adverse action sufficient for causation based on proximity); *cf. Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (holding three-month period between protected activity and adverse action insufficient to establish causation).

Because Plaintiff has established a prima facie case of retaliation, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802; *Chapman v. AI Transp*., 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc). If Defendant satisfies its "exceedingly light" burden of articulating a legitimate,

non-discriminatory reason for its decision, the burden then shifts back to the plaintiff to offer evidence that a reasonable jury could find that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination. *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994); *Perryman v. Johnson Prod. Co.*, 698 F.2d 1138, 1141-42 (11th Cir. 1983). If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it "head on and rebut it." *Chapman*, 229 F.3d at 1030.

Defendant asserts two connected legitimate, nondiscriminatory reasons for terminating Arceneaux. First, it asserts that Arceneaux had performance issues, including attendance issues, smoking, "operating the forklift recklessly," using his cellphone while working, and "playing loud music while operating a forklift." (Doc. # 47 at 21, 24-25 (quoting Doc. # 53-10 at 30-32, 36)). Second, according to Defendant, it had decided to "streamline" its workforce and hire an outside contractor to handle certain warehousing activities instead of retaining Arceneaux. (*Id.* (quoting Doc. # 53-10 at 32)). So, according to Defendant, it terminated Arceneaux because it was reducing its warehouse employee count, and Arceneaux was one of the two people it ultimately terminated because he performed poorly relative to his peers. These articulated reasons are sufficient to disperse any inference of retaliation. So, the burden is on Plaintiff to rebut Defendant's legitimate reasons for termination.

Plaintiff has established a dispute of fact regarding whether Defendant's proffered reasons for terminating Arceneaux are pretextual. That is, it has "demonstrate[d] weaknesses or implausibilities in the proffered legitimate reason so as to permit a rational jury to conclude that the explanation given was not the real reason, or that the reason stated was insufficient to warrant the adverse action." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1279 (11th Cir. 2008) (internal citation omitted).

First, as Plaintiff has already established, Arceneaux was fired very shortly after protected activity occurred. *Hurlbert*, 439 F.3d at 1298 ("[C]lose temporal proximity … is evidence of pretext."); *see King v. Sec'y, US Dep't of the Army*, 652 F. App'x 845, 847 (11th Cir. 2016). And, while temporal proximity is "insufficient to establish pretext by itself," other evidence of pretext along with temporal proximity may establish pretext. *Hurlbert*, 439 F.3d at 1298; *see Nance v. Health Care Auth. of City of Huntsville*, 2020 WL 2840092, at *26 (N.D. Ala. June 1, 2020).

In addition to temporal proximity, there is evidence from which a reasonable jury could conclude that Defendant's reasons asserted in its Motion (Doc. # 47) are a pretext for retaliation. Defendant asserts that Green "decided to hire a third party contractor in July 2015" and "knew that [he] would reduce the number of NDI employees." (Doc. # 53-51 at 6, ¶ 13). Defendant contends that, before the contractor "started, [he] decided to terminate **[Arceneaux]." (*Id*.). So, when** the contractor started working for Defendant, there were six employees in the warehouse, and Defendant fired Arceneaux and one other employee. However, despite Green's intention to cut the workforce and fire Arceneaux from his position as a temporary staffer provided to Defendant by Industrial Staffing, Defendant hired him as a full-time employee August 1, 2015. (Doc. # 52 at 16, ¶ 54 (citing 53-50 at 40)). Elevating Arceneaux to full-time status weakens Defendant's explanation that it had already planned to terminate him, particularly in light of Green's admission that Defendant was "growing and … having a difficult time … fulfilling special orders." (Doc. # 53-21 at 22). Based on this conflicting evidence, a jury could reasonably view Defendant's explanation for terminating Arceneaux for "overtime man hour issues" as weak, implausible, and pretextual. *Cleveland*, 369 F.3d at 1194 (holding that inconsistent work policy justifications "allowed jury to question [employers] credibility" with respect to reasons for termination to raise a dispute whether termination was pretextual); *Rojas*, 285 F.3d at 1342; *Rioux*, 520 F.3d at 1279.

Green also failed to inform Semien, his Warehouse Manager at the time who was involved in staffing decisions, of his decision to terminate Arceneaux. (Docs. # 53-20 at 22; 53-8). And, importantly, a jury may question Defendant's proffered reason because it retained *most* (4 out 6) of the warehouse employees and hired still more warehouse workers after terminating Arceneaux. (Docs. # 52 at 44; 53-51 at 6, ¶ 13).

Even accepting Defendant's rationale that it did need to cut part of its workforce, there is also evidence in the Rule 56 record to dispute Defendant's honestly held belief that Arceneaux was a poor performer. Again, the court reiterates that it is "not in the business of adjudging whether employment decisions are prudent or fair."[12] *Rojas*, 285 F.3d at 1342. But, where there is a dispute that goes to the "factual basis" for an employer's subjective justifications for termination, **there is** a question for a jury to decide. *Id.* at 1343 (citing *Damon*, 196 F.3d at 1361). And, a dispute about an employer's subjective reasons for termination may show "weaknesses, implausibilities, [or] inconsistencies" such that a reasonable jury "could reject [a defendant's] proffered explanation as not credible." *Morris v. Sprint/United Mgmt. Co., Inc.*, 2010 WL 11565304, at *13 (N.D. Ala. Sept. 15, 2010); *see Alphin v. Sears, Roebuck & Co*., 940 F.2d 1497, 1501 n.1 (11th Cir. 1991). Here, whether Arceneaux damaged any merchandise or operated a forklift unsafely is disputed. (Doc. # 53-1 at 33). Unlike Arceneaux's two attendance citations (he disputes their accuracy, but does not dispute that they were issued),[13] there is no tangible record of any unsafe driving,

---

[12] There are, of course, some limitations on the court's consideration of evidence relevant to pretext. This court is not to judge whether an employer's decision is "prudent and fair" but only whether an unlawful discriminatory animus motivated an employment decision. *Damon*, 196 F.3d at 1361. The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs or "reality as it exists outside of the decision maker's head." *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010). In other words, this court is "not interested in whether the [Defendant's] conclusion [that Plaintiff was a bad employee] is a correct one, but whether it is an *honest one*" in his mind. *Rojas v. Fla.*, 285 F.3d 1339, 1342 (11th Cir. 2002) (emphasis added).

[13] One of his attendance citations was issued *before* Defendant elevated Arceneaux to full-time employee status. (Doc. # 53-53). And, as to the other attendance issue, Plaintiff disputes that Arceneaux was violated any company policy. (Doc. # 53-1 at 14).

smoking, damaged inventory, or cell phone usage in violation of any policy. (Doc. # *See id.* at 41-42). *See Wascura v. City of S. Miami*, 257 F.3d 1238, 1245 (11th Cir. 2001) (citing *Stanfield v. Answering Serv.*, Inc., 867 F.2d 1290, 1294 (11th Cir.1989)) (stating that "lack of complaints or reports … in a personnel file may support a finding of pretext"). All of these facts call into question the veracity of Defendant's alleged reason for terminating Arceneaux.

Further, there is a dispute whether Arceneaux was treated differently than other employees with similar infractions, which goes to whether Defendant's reasons (even if true) were "insufficient to warrant the adverse action." *Rioux*, 520 F.3d at 1279 (citations omitted). For example, there is evidence that other employees damaged merchandise and used cell phones without Defendant taking any disciplinary action against them. (Docs. # 53-32 at 4, ¶ 18; 53-5 at 4, ¶ 19). *See Osram Sylvania, Inc. v. Teamsters Loc. Union 528*, 87 F.3d 1261, 1265 (11th Cir. 1996) ("Disparate treatment exists when similarly situated workers are treated differently even though they have committed similar acts."); *Ritchie v. Indus. Steel, Inc.*, 426 F. App'x 867, 873 (11th Cir. 2011) ("A plaintiff can also show pretext by demonstrating that the employer did not follow its normal procedures in terminating his employment."). In addition, there is evidence that Defendant did not have a policy against loud music or cell phone use at the time it terminated Arceneaux. (Docs. # 53-32 at 4, ¶ 19; 53-5 at 4, ¶ 17; 53-24 at 4, ¶¶ 22-23). All of these factual disputes must be reserved for a jury in deciding whether Defendant terminated Arceneaux for a legitimate business reason or in retaliation for Alicia's protected activity.

### D.     Plaintiff Has Established That Defendant Retaliated Against Alicia Jenkins

Plaintiff also asserts a retaliation claim on behalf of Alicia against Defendant. (Doc. # 1 at 7-8). Specifically, it asserts that Defendant retaliated against her as a matter of law by firing her son, Arceneaux (*Id.*). Defendant argues that any retaliatory action against Arceneaux was not an

adverse action against Alicia as a matter of law. (Doc. # 47 at 26). That is not how the court sees it.

Defendant construes Title VII's retaliation provisions too narrowly. Title VII prohibits any employer from "discriminat[ing] against any … applicant[] for employment … because [she] has opposed any practice made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-3(a). The Supreme Court held that a retaliation claim may be supported by an employer terminating a family member in retaliation of an applicant's protected activity.[14] *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 173 (2011) (internal citation omitted) (reiterating that the *Burlington* held that the retaliation provision "is not limited to discriminatory actions that affect the terms and conditions of [plaintiff's] employment"); *see also Thompson*, 562 U.S. at 174; *Rainey v. Holder*, 412 F. App'x 235, 238 (11th Cir. 2011) (internal citations omitted) (distinguishing "petty and trivial actions" that do not constitute adverse retaliatory actions from actions that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination). The court thinks "[I]t [is] obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her [son] would be fired." *Thompson*, 562 U.S. at 174. The evidence indicates that Alicia, an applicant for Defendant's Warehouse Coordinator position, engaged in protected activity by complaining about Semien's discriminatory comments. Thereafter, her son was fired. That action would tend to have the effect of dissuading someone like Alicia from opposing practices that violate Title VII.

---

[14] Defendant argues that *Thompson* does not apply here because the plaintiff in that case was the individual who was terminated, not the individual who engaged in the protected activity. (Doc. # 59 at 11-12). But, that distinction is without merit. To the extent that Defendant is trying to argue that Alicia is not aggrieved and does not fall within Title VII's enforcement provision, that argument misses the mark because Alicia's claim for discrimination falls within the "zone of interests" "protected by" Title VII. *Id.* at 179 (internal citations omitted). Indeed, Title VII's "antiretaliation provision seek[s] to prevent harm" against those who engage in protected conduct. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006).

## V.     Conclusion

For all the foregoing reasons, the court concludes that Defendant's Motion for Summary Judgment (Doc. # 46) and Motion to Strike Certain Exhibits (Doc. # 60) are due to be denied. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this June 25, 2021.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE